UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Reverend Franklin C. Reaves, Ph.D., | ) C/A No.: 4:10-125-TLW-TER |
|                  Plaintiff, | ) |
| vs. | ) |
| Sherry R. Rhodes, individually and in her official capacity as Clerk of Court for Marion County; Mark Richardson, individually and in his official capacity as Sheriff of Marion County; Levon Nichols, individually and in his official capacity as Deputy Sheriff of Marion County; Willie Dean White, individually; City of Mullins; Pam Lee, individually and in her official capacity as Mayor; Terry B. Strickland, individually and in his official capacity; Terry Davis, individually and in her official capacity; Wayne Collins, individually and in his official capacity; Jo A. Sanders, individually and in her official capacity; Patricia A. Phillips, individually and in her individual capacity; Carolyn Wilson, individually and in her official capacity; City of Mullins Police Department; Kenny Davis, individually and in his official capacity as Chief of Mullins Police Department; South Carolina Department of Social Services, | ) REPORT AND RECOMMENDATION |
|                  Defendants. | ) |

**I.     INTRODUCTION**

Plaintiff, who is proceeding pro se, alleges a cause of action pursuant to 42 U.S.C. § 1985(3) for conspiracy to interfere with his civil rights.  He also asserts state law claims for conspiracy, negligent infliction of emotional distress, intentional infliction of emotional distress, coercion, contempt of court order, and defamation of character.  Plaintiff's Complaint arises out of his belief that he has been forced on numerous occasions to pay child support when no order exists requiring him to pay child support.  Plaintiff originally filed this action in the Court of Common Pleas, Marion County, State of South Carolina.  Defendants removed the action to this Court pursuant to 28 U.S.C.

§ 1331.

Presently before the Court are Plaintiff's Motion for Default Judgment (Document # 31), Defendants Wayne Collins, Kenny Davis, Terry Davis, Pam Lee, City of Mullins Police Department, City of Mullins, Patricia A Phillips, Jo A Sanders, Terry B Strickland, and Carolyn Wilson's (collectively, "the Mullins Defendants") Motion for Summary Judgment (Document # 64) and Defendants Levon Nichols, Sherry R Rhodes, Mark Richardson, and South Carolina Department of Social Services' (collectively, "the Marion Defendants") Motion for Summary Judgment (Document # 75).  Because Plaintiff is proceeding pro se, he was advised pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), that a failure to respond to Defendants' Motions could result in the Motions being granted.  Plaintiff has not responded to the Mullins Defendants' Motion but did file a Response (Document # 93) to the Marion Defendants' Motion. This matter has been referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(e), DSC. Because these Motions are potentially dispositive of Plaintiffs' claims, this Report and Recommendation is entered for review by the district judge.

## II.     PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT

Plaintiff asks this court to enter an Order of Default pursuant to Rule 55(a), Fed.R.Civ.P., against Willie D. Reaves for her failure to file an Answer.  However, Plaintiff has not named "Willie D. Reaves" as a Defendant in this action.  Thus, it is recommended that Plaintiff's Motion be denied.[1]

---

[1] Plaintiff has named "Willie Dean White" as a Defendant and she has not made an appearance in this action.  However, even if the undersigned were to read Plaintiff's Motion as seeking default against Willie Dean White, such relief is not appropriate because Plaintiff has failed to present any evidence nor is there any in the record that Willie Dean White has been properly served.  Furthermore, because Plaintiff has failed to show that Willie Dean White has

**III.    MOTIONS FOR SUMMARY JUDGMENT**

  **A.    Facts**

Plaintiff asserts in his Affidavit that there has never been filed in the State of South Carolina courts a complaint for divorce by Willie Dean Reaves.[2] Plaintiff Aff. ¶ 5. However, the record reveals that on September 27, 1988, the Marion County Family Court ordered the Plaintiff to pay his exwife, Willie Dean Reaves, $300.00 per month (plus a 5% ($15.00) service charge) in alimony through the Marion County Clerk of Court. Rhodes Aff. ¶ 4 & Ex. A. The order provides that payments are to be made beginning October 5, 1988, and in the same amount on the same day each thereafter until further order. Id. Rhodes avers that, to her knowledge, no South Carolina court has ever vacated, reversed, amended, or otherwise invalidated or altered the order entered September 27, 1988. Id. ¶ 5. In the years following, the Plaintiff has been in violation of that order on numerous occasions. Id. ¶ 6. The Plaintiff was, at one point in time, more than $45,000.00 in arrears in alimony payments due his wife, having not made a payment in over 10 years. Id. ¶¶ 10-13 & Ex. H.

Since the Plaintiff was ordered to pay alimony through the clerk of court, Mrs. Rhodes (and her predecessors), as the Marion County Clerk of Court, has been required under Rule 24 of the South Carolina Family Court Rules to conduct periodic reviews of the Plaintiff's alimony account, and to issue rules to show cause whenever the account is in arrears. Id. ¶ 6. Given his failure to

---

been served and more than 120 days have passed since the Complaint was filed, it is recommended that any claims against Willie Dean White be dismissed pursuant to Rule 4(m), Fed.R.Civ.P.

   [2]While the actual Divorce Decree is not in the record, the Marion Defendants have presented several other court orders which indicate that Plaintiff and Willie Dean Reaves were divorced by Decree of the Family Court, County of Marion, State of South Carolina in August of 1988. See, e.g., Rhodes Aff. at Exs. B, C, D

make alimony payments as ordered, Mrs. Rhodes has been forced to issue repeated rules to show cause against the Plaintiff in an effort to gain his compliance with the family court's orders. Id. ¶¶ 6-8, 11, 15, 17, & Exs. F, J & M. Plaintiff avers that he has never been served a rule to show cause. Plaintiff Aff. ¶¶ 7-8.

The standard, computer-generated rules to show cause used by the Marion County clerk's office stated that the defaulting party failed to pay "child support," regardless of whether the case involved alimony or child support. Rhodes Aff. ¶ 7 & Exs. F, J & M. Since the Plaintiff was ordered to pay alimony rather than child support, the caption of every rule to show cause issued in his case stated that the Plaintiff's was an "Alimony Case." Id. ¶ 8 & Exs. F, J & M. Moreover, the clerk's office would scratch out "child support" from the body of the rules to show cause, and would handwrite "Alimony" its place – though this was sometimes overlooked. Id. ¶ 8 & Exs. F, J & M.

When the Plaintiff would fail to respond to the rules to show cause, the Marion County Family Court issued, at various times including on June 9, 2005, August 10, 2006, July 24, 2008, and April 30, 2009, bench warrants for the Plaintiff's arrest. Id. ¶¶ 9-11, 15-17, & Exs. E, G, K & N. Those bench warrants: (1) were issued by the presiding family court judge; (2) commanded law enforcement officers, including sheriffs and deputies, to arrest the Plaintiff; and (3) referred to alimony, not child support. See id at Exs. E, G, K, & N.

The August 10, 2006, bench warrant was finally executed in January 2008, when the Plaintiff was arrested and taken before the Hon. William Young, then-Family Court Judge, on January 24, 2008. Id. ¶¶ 12-13 & Ex. H. Judge Young found that the Plaintiff owed $45,358.96 in past due alimony, held the Plaintiff in civil contempt, and sentenced him to confinement in jail for six months or until he paid all arrearages due. Id. ¶ 13 & Ex. H. During that contempt hearing, the Plaintiff

-4-

attempted to argue that he owed nothing to his ex-wife because a purported 2006 divorce order which he obtained in North Carolina[3] did not order alimony to be paid. Id. at Ex. H. Judge Young rejected this argument, holding that a North Carolina decree could not alter a prior South Carolina court order to pay alimony. Id. Plaintiff paid the $45,358.96 arrearage by check the next day and was promptly released from jail. Id. ¶ 14. Following the Plaintiff's arrearage payment, on February 6, 2008, the Hon. Jerry Vinson, Family Court Judge, issued a written order directing that upon clearance of the check, the money was to be released and paid to the Plaintiff's ex-wife, Willie Dean Reaves. Id. ¶ 14 & Ex. I.

The July 24, 2008 bench warrant was executed on December 31, 2008, when the Plaintiff was arrested and booked into jail. Id. ¶ 16. At that time the Plaintiff owed $3,465.00 in past due alimony. Id. Plaintiff paid the past due alimony that day, and was released from jail upon an order of discharge issued by Mrs. Rhodes. Id. ¶ 16 & Ex. L.

On December 14, 2009, the defendant Deputy Nichols was on patrol and spotted the Plaintiff driving down the road. Deputy Nichols is and was then a Class III officer whose primary responsibilities include serving family court process and orders, including bench warrants; therefore, he was aware that the April 30, 2009 bench warrant was outstanding. Nichols Aff. ¶¶ 2-3. Plaintiff drove to his mother's house in Mullins, and when the Plaintiff exited his car, Deputy Nichols told the Plaintiff that there was a bench warrant for his arrest. Id. ¶ 5. When Deputy Nichols went to apprehend the Plaintiff, the Plaintiff pulled away, proclaimed that Deputy Nichols did not have jurisdiction inside the Mullins city limits, and went into his mother's house. Id. Deputy Nichols

---

[3]On November 2, 2006, the North Carolina Superior Court for Columbus County, North Carolina granted Plaintiff an "Absolute Divorce, no alimony support and Wife renounce husband's last name "Reaves." Plaintiff Aff. ¶ 10 & Ex. A.

radioed for back up, but when back up arrived a short time later, the Plaintiff was no longer at his mother's house having apparently slipped out of a back door. Id. ¶ 6-7. The Plaintiff successfully evaded arrest on that date. Id. ¶ 8.

Finally, the April 30, 2009 bench warrant was executed on March 22, 2010, when the Plaintiff was arrested and taken before the Hon. A. E. Morehead, III, Family Court Judge. Rhodes Aff. ¶ 18 & Ex. O. Judge Morehead found that the Plaintiff owed $4,725.00 in back alimony, held the Plaintiff in civil contempt, and sentenced him to confinement in jail for six months or until he paid all arrearages due. Id. The Plaintiff paid the arrearage that day, and was released from jail. Id. ¶ 19 & Ex. P.

**B.    Standard of Review**

The moving party bears the burden of showing that summary judgment is proper. Summary judgment is proper if there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Summary judgment is proper if the non-moving party fails to establish an essential element of any cause of action upon which the non-moving party has the burden of proof. Celotex, 477 U.S. 317. Once the moving party has brought into question whether there is a genuine dispute for trial on a material element of the non-moving party's claims, the non-moving party bears the burden of coming forward with specific facts which show a genuine dispute for trial. Fed.R.Civ.P. 56(e); Matsushita Electrical Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574 (1986). The non-moving party must come forward with enough evidence, beyond a mere scintilla, upon which the fact finder could reasonably find for it. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). The facts and inferences to be drawn therefrom must be viewed in the light most favorable to the non-moving

party. Shealy v. Winston, 929 F.2d 1009, 1011 (4th Cir. 1991). However, the non-moving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment. Barber v. Hosp. Corp. of Am., 977 F.2d 874-75 (4th Cir. 1992). The evidence relied on must meet "the substantive evidentiary standard of proof that would apply at a trial on the merits." Mitchell v. Data General Corp., 12 F.3d 1310, 1316 (4th Cir. 1993).

To show that a genuine dispute of material fact exists, a party may not rest upon the mere allegations or denials of his pleadings. See Celotex, 477 U.S. at 324 (Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves). Rather, the party must present evidence supporting his or her position through "depositions, answers to interrogatories, and admissions on file, together with ... affidavits, if any." Id. at 322; see also Cray Communications, Inc. v. Novatel Computer Systems, Inc., 33 F.3d 390 (4th Cir. 1994); Orsi v. Kickwood, 999 F.2d 86 (4th Cir. 1993); Local Rules 7.04, 7.05, D.S.C.

### C. Discussion

#### 1. Rooker-Feldman Doctrine

To the extent Plaintiff is attempting to challenge the orders requiring him to pay alimony, he may not use a civil rights action to challenge the determinations or rulings of the South Carolina State Courts. See Anderson v. Colorado, 793 F.2d 262, 263 (10th Cir.1986) ("[I]t is well settled that federal district courts are without authority to review state court judgments where the relief sought is in the nature of appellate review."). In Brinkmann v. Johnston, 793 F.2d 111, 113 (5th Cir.1986), a plaintiff brought a § 1983 action against his ex-wife, her attorney, and the judge who presided over the divorce action. The United States Court of Appeals for the Fifth Circuit held that characterization

of a suit as a civil rights action is ineffective to defeat the well-settled rule that litigants may not obtain review of state court actions by filing complaints in lower federal courts "cast in the form" of civil rights suits. Id. See also Wise v. Bravo, 666 F.2d 1328, 1333 (10th Cir.1981); Gurley v. Superior Court of Mecklenburg County, 411 F.2d 586, 587-588 & nn. 2-4 (4th Cir.1969) (holding that federal district courts and United States Courts of Appeals have no appellate or supervisory authority over state courts). Accord Hagerty v. Succession of Clement, 749 F.2d 217, 219-220 (5th Cir.1984) (collecting cases), cert. denied, Hagerty v. Keller, 474 U.S. 968, 106 S.Ct. 333, 88 L.Ed.2d 317 (1985); Gragg v. Nebraska ex rel. Buckendahl, No. 93-4191-SAC, 1994 WL 262690 (D.Kan., May 17, 1994) (following Anderson v. Colorado ), affirmed, Gragg v. Nebraska ex rel. Buckendahl, 39 F.3d 1191(10th Cir., November 7, 1994); Kansas Association of Public Employees v. Kansas, 737 F.Supp. 1153, 1154 (D.Kan.1990); Fuller v. Harding, 699 F.Supp. 64, 66-67 (E.D.Pa.1988), affirmed, Fuller v. Harding, 875 F.2d 310, (3rd Cir.1989) (Table).

  Proceedings and rulings made in the courts of the State of South Carolina cannot be reviewed or set aside by the United States District Court for the District of South Carolina in this case. See District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 476-82, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983) (a federal district court lacks authority to review final determinations of state or local courts because such review can only be conducted by the Supreme Court of the United States under 28 U.S.C. § 1257); Rooker v. Fidelity Trust Co., 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923). This prohibition on review of state court orders by federal district courts is commonly referred to as the Rooker-Feldman doctrine or the Feldman-Rooker doctrine. See, e.g., Exxon Mobile Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 125 S.Ct. 1517, 161 L.Ed.2d 454 (2005); Davani v. Va. Dep't of Transport., 434 F.3d 712 (4th Cir.2006); Ivy Club v. Edwards, 943 F.2d 270, 284 (3d

Cir.1991). Because the Rooker-Feldman doctrine is jurisdictional, it may be raised by the Court sua sponte. American Reliable Ins. Co. v. Stillwell, 336 F.3d 311, 316 (4th Cir.2003). According to the Fourth Circuit, "the Rooker-Feldman doctrine applies ... when the loser in state court files suit in federal district court seeking redress for an injury allegedly caused by the state court's decision itself." Davani v. Virginia Dep't of Transp., 434 F.3d 712, 713 (4th Cir.2006); cf. Ruttenberg v. Jones, 2008 WL 2436157 (4th Cir. June 17, 2008) (reversing a Rooker/Feldman dismissal).

Therefore, to the extent Plaintiff is challenging the underlying orders directing him to pay his alimony arrearage, such claims are subject to dismissal pursuant to the Rooker-Feldman doctrine.

### 3. Quasi-Judicial Immunity

Assuming, arguendo, this action is not subject to dismissal pursuant to the Rooker-Feldman doctrine, Defendants Sherry Rhodes, Sheriff Richardson, and Deputy Nichols are entitled to quasi-judicial immunity from the claims raised by Plaintiff. Judicial immunity extends to judicial officers for judicial acts taken within the court's subject matter jurisdiction. Stump v. Sparkman, 435 U.S. 349, 356 (1978). Absolute quasi-judicial immunity extends to non-judicial officers "performing tasks so integral or intertwined with the judicial process that these persons are considered an arm of the judicial officer who is immune." Bush v. Rauch, 38 F.3d 842, 847 (6th Cir. 1994); see also Ashbrook v. Hoffman, 617 F.2d 474, 476 (7th Cir. 1980); Roland v. Phillips, 19 F.3d 552, 555 (11th Cir. 1994). This immunity extends to subordinate officials for "functions that are more administrative in character [that] have been undertaken pursuant to the [judge's] explicit direction." Kincaid v. Vail, 969 F.2d 594, 601 (7th Cir. 1992). The basis for affording non-judicial officials absolute immunity is to prevent them from becoming a "lightning rod for harassing litigation aimed at judicial orders" which would inevitably result in tension between the courts and those officials

duty-bound to enforce the courts' orders and assist in the courts' business. <u>Valdez v. City and County of Denver</u>, 878 F.2d 1285, 1289 (10th Cir. 1989) (internal quotes omitted). Absolute immunity, therefore, extends to protect, among others, clerks of court, law enforcement officers, and others who enforce court orders.  <u>See</u>, <u>e.g.</u>, <u>Foster v. Walsh</u>, 864 F.2d 416, 417-18 (6th Cir. 1988) (clerk of court absolutely immune for issuing erroneous warrant pursuant to court's order); <u>Scott v. Dixon</u>, 720 F.2d 1542, 1546-47 (11th Cir. 1983) (clerk of court absolutely immune for issuance of warrant); <u>Mays</u>, 97 F.3d at 112-13 (sheriff absolutely immune for arresting plaintiff pursuant to facially valid court order); <u>Roland</u>, 19 F.3d at 555 (sheriff and deputy absolutely immune for enforcing facially valid court order); <u>Valdez</u>, 878 F.2d at 1287-90 (sheriff and deputies held absolutely immune for taking plaintiff into custody pursuant to judicial order); <u>Fowler v. Alexander</u>, 478 F.2d 694, 696 (4th Cir. 1973) (jailer immune for confining plaintiff pursuant to order of court); <u>Patterson v. Von Riesen</u>, 999 F.2d 1235, 1239-41 (11th Cir. 1993) (jailer immune for confining plaintiff pursuant to order of court).

Plaintiff's claims arise out of the issuance and execution (or attempted execution) of Rules to Show Cause and Bench Warrants.  The Rules to Show Cause all stem from Plaintiff's failure to comply with the September 27, 1988, Order directing Plaintiff to pay Willie Dean Reaves, $300.00 per month (plus a 5% ($15.00) service charge) in alimony each month until further order of the court. Since the 1988 support order directed the Plaintiff to pay alimony through the clerk's office, Mrs. Rhodes was compelled by Rule 24 of the South Carolina Family Court rules to conduct monthly reviews of that alimony account and to issue Rules to Show Cause whenever it appeared to be in arrears. <u>See</u> Rule 24(b), SCFCR.  Additionally, the Bench Warrants arise out of Plaintiff's failure to abide by the Rules to Show Cause and were all ordered by a family court judge and issued at the

judge's direction.  Sheriff Richardson and Deputy Nichols were equally constrained to "serve, execute and return every process, rule, order or notice issued by any court of record in this State or by other competent authority," which includes a family court, S.C. Code Ann. § 23-15-40. Accordingly, Defendants Rhodes, Richardson, and Nichols are entitled to absolute quasi-judicial immunity from the claims raised by Plaintiff and should be dismissed from this action.

### 2.     Child Support v. Alimony

Finally, even if this case is not subject to dismissal under the Rooker-Feldman doctrine, Plaintiff's claims are still without merit.  In his Complaint, Plaintiff repeatedly alleges that he was forced to pay child support.  See Complaint, ¶¶ 21-25, 28, 33-36, 41-43, 52-57, 64, 69.  However, Plaintiff fails to present evidence that he was ever forced to pay child support.  The record reveals that on June 9, 2005, Judge Vinson ordered that a bench warrant should be issued for Plaintiff's arrest for his failure to pay alimony as ordered, and the bench warrant was issued on June 16, 2005. Rhodes Aff. at Ex. E.  On January 24, 2008, Judge William Young of the Family Court for the 12th Judicial Circuit issued a Civil Contempt Order, finding that Plaintiff owed a support arrearage in his alimony case in the amount of $45,358.96.  Id. at Ex. H.  Plaintiff paid the $45,358.96 alimony arrearage and was released from jail the next day. Another bench warrant was ordered and issued on July 24, 2008, for Plaintiff's failure to pay alimony in the amount of $1,890.00 as ordered.  Id. at Ex. K.  Plaintiff was apprehended pursuant to that bench warrant on December 31, 2008.  At that time his arrearage was $3,465.00.  He paid the arrearage the same day and was released from jail.  Id. at Ex. L.  Another bench warrant was ordered and issued on April 30, 2009, for Plaintiff's failure to pay alimony.  Id. at Ex N.  On March 22, 2010, Plaintiff was brought before the Family Court for the 12th Circuit pursuant to the bench warrant and was ordered to pay $4,725.00 in support

arrearage. Id. at Ex. O. Plaintiff complied with the order and was released from jail the next day. Id. at Ex. P. Plaintiff fails to show that any of the amounts he paid pursuant to these Orders and/or bench warrants were for child support. Thus, Plaintiff fails to present sufficient evidence to support this allegation in his Complaint, which is central to all of the causes of action raised by Plaintiff.[4] Accordingly, summary judgment is appropriate for this reason as well.

## IV.  CONCLUSION

For the reasons discussed above, it is recommended that Plaintiff's Motion for Default Judgment (Document # 31) be denied, the Mullins Defendants' Motion for Summary Judgment (Document # 64) be granted and the Marion Defendants' Motion for Summary Judgment (Document # 75) be granted. Further, it is recommended that any claims against Defendant Willie Dean White be dismissed pursuant to Rule 4(m), Fed.R.Civ.P., and that this case be dismissed in its entirety.[5]

                                                         s/Thomas E. Rogers, III
                                                         Thomas E. Rogers, III
                                                         United States Magistrate Judge

January 26, 2011
Florence, South Carolina

**The parties are directed to the important information on the following page.**

---

[4] It is undisputed that the pre-printed, form rules to show cause issued by Defendant Rhodes included the phrase "child support" and that, on occasion, Rhodes failed to strike through "child support" and replace it with "alimony." Nevertheless, as discussed above, Rhodes, and any Defendant who may have served the rules to show cause, are entitled to quasi-judicial immunity. Plaintiff fails to show that any of the other Defendants had any involvement with the rules to show cause.

[5] If the district judge accepts this recommendation, all other pending motions will be moot.